**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GABRIELA VERNOFF, on her own
behalf and on behalf of her minor
child BRANDALYNN VERNOFF,
                    *Plaintiff-Appellant,*

          v.

MICHAEL J. ASTRUE, of Social
Security, in his official capacity,
and his employees, agents and
successors in office,
                    *Defendant-Appellee.*

No. 08-55049

D.C. No.
CV-04-03237-CJC

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
May 6, 2009—Pasadena, California

Filed June 17, 2009

Before: Cynthia Holcomb Hall, Andrew J. Kleinfeld, and
Barry G. Silverman, Circuit Judges.

Opinion by Judge Hall

## COUNSEL

James T. Raetz and Wallace R. Vernoff, Coulter Vernoff & Pearson, Pasadena, California, for the appellant.

Gregory G. Katsas, Assistant Attorney General, and Kelsi Brown Corkran, Attorney, Civil Division, Department of Justice, Washington, D.C. for the appellee.

## OPINION

HALL, Circuit Judge:

Gabriela Vernoff ("Vernoff"), on her own behalf and on behalf of her minor child Brandalynn Vernoff ("Brandalynn"), appeals the district court's summary judgment in favor of the Commissioner of the Social Security Administration's ("SSA") denial of her claim for child survivor benefits. The SSA determined that Brandalynn did not meet the eligibility requirements because she could not establish that she was dependent upon the deceased insured at the time of his death under California law, due to her posthumous conception. Vernoff also appeals the district court's denial of her claim that the SSA's exclusion of certain posthumously-conceived children violates the Equal Protection Clause. We affirm.

## I.   Background

Vernoff and the insured, Bruce Vernoff, were married for five years when Bruce died of accidental causes in July 1995. Shortly after his death, Vernoff directed a physician to extract five vials of Bruce's semen. The couple had no children, and there is no evidence to suggest that Bruce consented to the procedure or had ever contemplated having a child postmortem. In June 1998, Vernoff underwent in vitro fertilization using Bruce's sperm and Brandalynn was born March 17, 1999.

In October 1999, Vernoff filed her initial claim for child survivor benefits with the Social Security Administration, on behalf of both Brandalynn and herself, as the mother of a surviving child. Her claim was denied both by the SSA and on appeal before an Administrative Law Judge ("ALJ") before she appealed to the district court. While her appeal was pending, this court decided *Gillett-Netting v. Barnhart*, 371 F.3d 593 (9th Cir. 2004), and the SSA subsequently issued an Acquiescence Ruling to the decision on September 22, 2005. *See* Social Security Acquiescence Ruling 05-1(9) ("SSAR"), 70 Fed. Reg. 55,656 (Sept. 22, 2005). The district court remanded the case to the SSA for further proceedings in light of the two decisions. The SSA reaffirmed its final decision in December 2006, and the district court affirmed the decision in 2007.

## II.   Standard of Review

We review de novo the district court's decision to uphold the SSA's denial of benefits. *See Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). The agency's final decision denying benefits must be affirmed unless the findings are based on legal error or are unsupported by substantial evidence. *Id.* "Considerable weight" must be given to the construction of the Act adopted by the Commissioner of the SSA, who has statutory authority to interpret and enforce the Social

Security Act ("Act") under 42 U.S.C. § 405(a). *See Das v. Dep't of Health & Human Servs.*, 17 F.3d 1250, 1254 (9th Cir. 1994).

### III. Discussion

#### 1. The *Gillett-Netting* Decision

In *Gillett-Netting*, we contemplated the Act's application to posthumously-conceived children for the first time. The case centered around twins conceived 10 months after their father's passing. *Gillett-Netting*, 371 F.3d at 595. Their father, Netting, delayed cancer treatment in order to deposit semen for later use by his wife. *Id.* at 594. Before he died, he confirmed that he wanted his wife to have their child using his frozen sperm. *Id.* at 595.

[1] We first noted that to receive benefits under the Act, a claimant must show that: (1) he or she is a "child," under the Act; and (2) he or she "was dependent on the insured wage earner at the time of his death." *Id.* at 596 (citing 42 U.S.C. § 402(d)(1)). We then interpreted the word "child," for purposes of 42 U.S.C. § 416(e), "to mean the natural, or biological, child of the insured." *Id.* In doing so, this court held that, contrary to the SSA's interpretation, a child did not also have to satisfy the terms of § 416(h)(2), (3) (demonstrating right to take through intestacy laws of the State and other means of establishing paternity) where parentage was not disputed. *Id.* at 596-97.

We next examined the dependency requirement of § 402(d). The Act does not require proof of actual dependency for those children that are deemed dependent, through a determination either that they are the legitimate child of the insured under state law or a deemed legitimate child through compliance with § 416(h). *See* § 402(d)(3).[1] Applying Ari-

---

[1]Section 402(d)(3) reads as follows:

A child shall be deemed dependent upon his father . . . at the time . . .

zona law, we held that the twins were the deemed dependents of Netting because they were his legitimate children under state law, which recognizes "[e]very child [as] the legitimate child of its natural parents." *Gillette-Netting*, 371 F.3d at 598 (quoting Ariz. Rev. Stat. § 8-601). Netting was the "natural parent" of the twins, in turn, as the "biological father of a child born using artificial insemination" of his spouse. *Id.* at 599 (citing Ariz. Rev. Stat. § 25-501).[2]

## 2. The Social Security Acquiescence Ruling

**[2]** In the SSAR, the SSA reaffirmed its interpretation of § 416(e)—that to meet the Act's definition of "child" for purposes of § 416(e) a child must also demonstrate a sufficient connection to the insured through compliance with § 416(h)(2), (3)—but acquiesced to *Gillett-Netting*'s interpretation of § 416(e) for the Ninth Circuit only. 70 Fed. Reg. 55,657. The SSAR also reaffirmed that, in the usual circumstances, this means a "child" can only be *deemed* a legitimate child for dependency purposes, under § 402(d)(3), if she has already first complied with § 416(h)(2) and shown that she is

[of death] unless, at such time, such individual was not living with or contributing to the support of such child and —

    (A)    such child is neither the legitimate nor adopted child of such individual, or

    (B)    such child has been adopted by some other individual.

For purposes of this paragraph, a child deemed to be a child of a fully or currently insured individual pursuant to section 416(h)(2)(B) or section 416(h)(3) of this title shall be deemed to be the legitimate child of such individual.

[2]This court also specifically noted that even Arizona law would not treat every sperm donor as a "natural parent," and thus legitimate, solely by demonstrating a biological relationship to the insured. *See Gillett-Netting*, 371 F.3d at 599 n.7. In *Gillett-Netting*, the "natural parent" requirement was satisfied because the insured was the spouse of the biological mother at the time he agreed to the posthumous conception. *See* Ariz. Rev. Stat. § 25-501(B).

able to inherit through the intestacy laws of the state of the insured's residence.[3] *Id.* The SSAR noted that in the Ninth Circuit, however, due to *Gillett-Netting*, the child must only be biologically related to the insured, and must only "be the insured's 'legitimate' child" under applicable state law to be deemed dependent for purposes of § 402(d)(3). *Id.* The SSAR further explained, however, that the legitimacy distinction has been replaced in jurisdictions within the Ninth Circuit by a system of "rights which flow between parents and their children, regardless of the parents' marital status." *Id.* In conclusion, the SSAR stated that "[a] child acquires these rights [and thus is deemed both legitimate and dependent] *if he establishes that an individual is his parent under State family law provisions*." *Id.* (emphasis added).

## 3. Determining Parentage Under California Law

**[3]** Though our decision in *Gillett-Netting* and the SSA's subsequent Acquiescence Ruling require Brandalynn to be considered the insured's "child" under the Act because of her biological relationship to the insured, that determination does not end our inquiry. Vernoff must also establish that Brandalynn was dependent upon the insured at the time of his death, *see* § 402(d)(1)(C)(ii), to be eligible for benefits. Brandalynn has three methods of establishing dependency under § 402(d)(3): (1) show actual dependency at the time of the insured's death; (2) satisfy the requirements in the Ninth Circuit under the SSAR and *Gillett-Netting* by establishing that the insured is her "parent" under California law provisions and that she is, therefore, deemed both legitimate and dependent; or (3) satisfy the requirements under § 416(h)(2) by establishing that she may inherit from the insured under the intestacy laws of California, and therefore, is deemed legitimate, *see* SSAR, 70 Fed. Reg. 55,657. Vernoff cannot estab-

---

[3]A child can also show deemed legitimacy through compliance with § 416(h)(3), but that method is inapplicable to this case and we do not separately discuss it.

lish that Brandalynn was actually dependent upon the insured at the time of his death, as Brandalynn was not yet conceived, so she must rely on the other two methods of establishing deemed dependency. We first examine whether Vernoff can establish that the insured is Brandalynn's natural father under California law.

As noted above, in *Gillett-Netting* we relied on Arizona state law, which recognizes "[e]very child [as] the legitimate child of its natural parents." 371 F.3d at 598 (quoting Ariz. Rev. Stat. § 8-601, second alteration added). The SSAR recognized that all jurisdictions within the Ninth Circuit, excepting Guam, had similarly eliminated categorization of children based upon the marital status of their parents. 70 Fed. Reg. 55,657. Therefore, following the approach taken in *Gillett-Netting*, the SSAR instead required a claimant to establish that the insured was his or her parent under State law.[4] For the court in *Gillett-Netting*, this determination was based upon Arizona's recognition of biological parenthood as sufficient to establish "natural" parenthood, particularly for the "biological father of a child born using artificial insemination" of his spouse. 371 F.3d at 599 (citing Ariz. Rev. Stat. § 25-501).

California has taken a different approach to resolving the problems posed by categorizing a child as legitimate or illegitimate. Rather than deeming every child legitimate, as Arizona has, California has instead chosen to replace the legitimacy determination with an alternate scheme "which bases parent and child rights on the existence of a parent and child relationship rather than on the marital status of the parents." *See Johnson v. Calvert*, 5 Cal. 4th 84, 88-89 (1993). A parent and child relationship can be established only between

---

[4]The SSA's interpretation of legitimacy for purposes of § 402(d)(3) is entitled to deference as a "permissible construction of the statute." *See Mesa Verde Constr. Co. v. N. Cal. Dist. Council of Laborers*, 861 F.2d 1124, 1130 n.5 (9th Cir. 1988) (en banc); *see also Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002).

a child and his natural or adoptive parent. *See* Cal. Fam. Code § 7601.

**[4]** The primary means for a father in California to acquire rights as a natural father is through application of California Family Code § 7611. That section sets out several methods by which a father is presumed to be the natural parent of a child, including, most relevant to this case, if "[h]e and the child's natural mother are or have been married to each other and the child is born during the marriage or within 300 days after the marriage is terminated by death . . . ." § 7611(a). Because the Vernoff's marriage was terminated by death, and Brandalynn was not born with 300 days of the insured's death,[5] the insured is not presumed to be her natural father under this provision. None of the other presumptions set forth in § 7611 are applicable either, including if a man "receives the child into his home and openly holds out the child as his natural child," § 7611(d), or presumptions concerning situations in which both parents are cohabitating and there is a question as to the biological relationship, or where there is a voluntary acknowledgment of paternity, *see* §§ 7540, *et seq.* and 7570, *et seq.*[6]

---

[5]Vernoff argues that the allowance for a child to be born within 300 days of the husband's death already provides a presumption of natural fatherhood for posthumously-conceived children. This argument is untenable. The intent of the legislature was clearly to provide a sufficient gestational window for those children conceived prior to death, especially as posthumous conception was not a medical reality at the time the statute was passed. *See Bodell Constr. Co. v. Trs. of Cal. State Univ.*, 62 Cal. App. 4th 1508, 1516 (Ct. App. 1998) ("The legislative purpose will not be sacrificed to a literal construction of any part of the statute.").

[6]Section 7611(f), which extends the presumption of natural parent status to posthumous children conceived under conditions that satisfy the terms of § 249.5 of the California Probate Code, does not control this court's, or the SSA's determination. Pursuant to 20 C.F.R. § 404.355(b)(4), the SSA applies state law at the time of the death of the insured, unless a more favorable state law is enacted before the SSA makes a final determination on the claim. Here, § 249.5 was not effective until 2006, so need not be

**[5]** Contrary to Vernoff's assertions, California law does not equate natural parent status with biological parenthood such that a mere biological relationship is sufficient under California law to grant status as a natural parent. The California Supreme Court has noted that "[t]he paternity provisions are driven not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family." *Elisa B. v. Superior Ct.*, 37 Cal. 4th 108, 121-22 (2005) (quoting *In re Salvador M.*, 111 Cal. App. 4th 1353, 1357-58 (Ct. App. 2003)); *see also In re T.R.*, 132 Cal. App. 4th 1202, 1209 (Ct. App. 2005) ("A biological father can be a presumed father, but is not necessarily one; and a presumed father can be a biological father, but is not necessarily one.").

This concept is illustrated by an examination of California's Family Code and family law decisions. The presumed natural father section itself does not mention nor require a biological relationship between the father and the child. *See* § 7611. Moreover, while § 7612 of the California Family Code allows the presumption of § 7611 to be rebutted with biological evidence, the rebuttal is only permissive, not required, and is only permitted where the biological relationship (or lack thereof) is demonstrated by clear and convincing evidence. *See Elisa B.*, 37 Cal. 4th at 125 (refusing to rebut the presumption of natural parenthood for non-biological lesbian mother following termination of the relationship with the biological mother). Furthermore, and analogously, § 7613 of the California Family Code deems the husband who has consented to his wife's artificial insemination by another man's biological gamete, to be the "natural" parent. Section 7611.5

considered unless it is favorable to Vernoff. That provision expressly requires both that the decedent specify, in writing, that his or her genetic material can be used for posthumous conception, § 249.5(a), and that the resulting child is in utero within two years of the decedent's death, § 249.5(c). *See infra* n.8. Because Vernoff satisfies neither requirement, § 7611(f) and § 249.5 cannot be used to establish the insured as Brandalynn's natural father.

of the Family Code, too, does not rely on biological parent-hood alone, as that section precludes rapists from acquiring natural father status. Moreover, in *In re Jerry P.*, 95 Cal. App. 4th 793 (Ct. App. 2002), a case Vernoff cites to for the importance of biological parenthood, the court protected presumed natural parent rights for a man who was not biologically related to his son, observing that "[a]s adults we must not forget what every child knows—the parent-child relationship is not spun from DNA." *Id.* at 817.

**[6]** While Vernoff is correct in asserting that § 7611 is not the *exclusive* means of determining natural parent status, *see, e.g.*, § 7613 (consenting husband natural father of child conceived through artificial insemination of his wife), Vernoff has failed to establish that the insured qualifies as Brandalynn's natural father under *any* California Family Code provision.

**[7]** California Family Code § 7630(c), which allows Vernoff to initiate a court action to establish paternity where there is no presumed father or the presumed father is deceased, is of little help to her. In any paternity action, a California state court would apply the same Family Code provisions to determine who is Brandalynn's natural father. None of those provisions contemplate this situation. The most analogous provision, § 7613(b), excludes a sperm donor from status as a natural father. Section 7613(a) allows a husband to instead be treated as the natural father following artificial insemination of his wife, but only if he specifically consents to the artificial insemination. Consent is lacking here. Section 7630(f) also allows for a paternity suit to be filed in cases of artificial insemination, but only to enforce the intent expressed in the assisted reproduction agreement. Here, there is no agreement, or even evidence of the insured's consent or intent.

**[8]** The courts' reliance on the decedent's consent to the posthumous conception, as a basis for establishing natural parenthood, was central to the holdings in both *Gillett-Netting*

and in *Woodward v. Commissioner of Social Security*, 435 Mass. 536, 760 N.E.2d 257 (2002), a case cited by both *Gillett-Netting* and Vernoff. *See Woodward*, 435 Mass. at 553 (noting "inadequacy of a rule that would make the mere genetic tie of the decedent to any posthumously conceived child" sufficient to establish the decedent as the legal father of any resulting child). Consent, in turn, demonstrates a willingness to support the child and an intent to create the child. In *Gillett-Netting*, the court determined that the insured was the natural parent under Arizona law because he was married to the children's biological mother at the time he consented to the posthumous conception. *See Gillett-Netting*, 371 F.3d at 599; *see also* Ariz. Rev. Stat. § 25-501(B). Both an intent to create and a willingness to support a child are relied upon regularly by California courts in determining whether an alleged parent should be considered a natural parent. *See, e.g.*, *Elisa B.*, 37 Cal. 4th at 125 (applying § 7611 presumption to lesbian, non-biological, mother "because she actively participated in causing the children to be conceived with the understanding that she would raise the children as her own together with the birth mother"); *In re Jerry P.*, 95 Cal. App. 4th at 817 (protecting natural parent rights of non-biological parent who was "indisputably ready, willing, and able to exercise the full measure of his parental responsibilities"); *In re T.R.*, 132 Cal. App. 4th at 1209-1210; *see also* Cal. Fam. Code §§ 7613, 7630(f).

**[9]** Vernoff has not persuasively argued that she would prevail in any suit filed under § 7630(c), based only upon the undisputed biological relationship between the insured and Brandalynn.[7] She has not provided any evidence of consent to the conception by the insured or his willingness to support

---

[7]Moreover, 20 C.F.R. § 404.355(a)(3) requires that a paternity court order must be issued prior to the insured's death. While § 404.355(a)(4) allows a claimant to overcome this deficiency through other persuasive evidence of natural parenthood, it also requires the claimant to show actual dependency, which Brandalynn cannot do.

Brandalynn, as the biological mother was able to do in *Gillett-Netting*. Therefore, Brandalynn does not fall under the Ninth Circuit's ruling in *Gillett-Netting* and the subsequent SSAR, and is not deemed to be the insured's legitimate child and deemed dependent for purposes of § 402(d)(3).

### 4. Determining Intestate Succession Under California Law

Vernoff's third and final option to establish Brandalynn as the insured's deemed dependent is to establish that Brandalynn can inherit from the insured's estate pursuant to California intestacy law. *See* SSAR, 70 Fed. Reg. 55,657 (citing §§ 402(d)(3), 416(h)(2)). Vernoff's primary argument is that the SSA has not shown that Brandalynn is *excluded* from California's intestacy provisions. This argument misplaces the burden, which is on Brandalynn to establish her eligibility. It also misconstrues the nature of intestacy law, which excludes from inheritance any person not specifically *included*. Three primary provisions of the California Probate Code merit our consideration: §§ 6407, 6453, and 249.5.

**[10]** Under § 6407, "[r]elatives of the decedent conceived before the decedent's death but born thereafter inherit as if they had been born in the lifetime of the decedent." Vernoff attempts to construe this provision in her favor, as a provision extending rights to "posthumous children." This argument fails, however, as children *born* posthumously, but conceived before death, and posthumously-*conceived* children are not similarly situated. As we discussed in relation to California Family Code § 7611(a), *see supra* n.5, this provision neither explicitly or impliedly includes posthumously-conceived children. Section 6407 does not extend intestacy rights to posthumously-conceived children. *Cf. Finley v. Astrue*, 372 Ark. 103, 270 S.W.3d 849 (2008).

Section 6453 of the California Probate Code defines natural parents for purposes of intestacy. The primary means of estab-

lishing a natural parent and child relationship, as in the family code, is through reliance on the unrebutted presumptions outlined in California Family Code § 7611. *See* § 6453(a). Natural parent status can also be established pursuant to an action permitted by § 7630(c), but only if one of three limited conditions also exists. Most relevant to this case is § 6453(b)(3), which allows a § 7630(c) action to establish paternity if "[i]t was impossible for the father to hold out the child as his own and paternity is established by clear and convincing evidence."

**[11]** Vernoff argues that § 6453(b) is an alternative means of showing that the insured is Brandalynn's natural father. It is unclear, however, if the provision could be used in this situation. Previously, courts have approved the "impossibility" argument only in situations where the alleged father died *after* the child was conceived but before it was born, *see Cheyanna M. v. A.C. Nielson Co.*, 66 Cal. App. 4th 855 (Ct. App. 1998), or where the child's mother or a third party was physically preventing the father from holding the child out as his own, *see In re Jerry P.*, 95 Cal. App. 4th at 809. After 2006, the "impossibility" condition of § 6453(b)(3) likely would not be applied to a posthumous conception situation, as a new condition outlined in § 6453(c) specifically applies when "[a] natural parent and child relationship may be established pursuant to § 249.5 [posthumous conception]." We need not decide if § 6453(b) could be extended to cover Brandalynn's situation, however, because Vernoff misconstrues the import of that section. Even if that section applies and it was impossible for the insured to hold out Brandalynn as his child, Brandalynn still cannot automatically take through the intestacy provisions. Instead, § 6453(b) would only permit a natural parent relationship to be established pursuant to a § 7630(c) action, and, as we explained above, Vernoff has not established that she would prevail in such action if it were filed (and it has not been).

**[12]** Finally, California Probate Code § 249.5, though not controlling because it was passed after the insured's death, *see supra* n.6, illustrates California's current legislative intent regarding posthumously-conceived children. Consistent with Massachusetts's determination in *Woodward*, § 249.5[8] only provides intestacy rights to posthumously-conceived children where it is guaranteed the decedent consented to the procedure and the conception is timely (promoting the interest in finality of an estate).[9] *See Woodward*, 435 Mass. at 551-552. Vernoff cannot establish Brandalynn's rights of intestacy through § 249.5 because Brandalynn was conceived nearly three years after the death of the insured and without his consent.

---

[8]Section 249.5 provides, in relevant part:

For purposes of determining right to property to be distributed upon the death of a decedent, a child of the decedent conceived and born after the death of the decedent shall be deemed to have been born within the lifetime of the decedent . . . if the child or his or her representative proves by clear and convincing evidence that all of the following conditions are satisfied:

(a) The decedent, in writing, specifies that his or her genetic material shall be used for the posthumous conception of a child of the decedent . . .

(c) The child was in utero using the decedent's genetic material and was in utero within two years of the date of issuance of a certificate of the decedent's death . . . .

[9]All other state statutes concerning posthumous conception also support the sound policy determination that the decedent's consent to the conception is essential, but not always sufficient, to establish parentage or intestate eligibility. *See* Ala. Code § 26-17-707; Colo. Rev. Stat. § 19-4-106(8); Del. Code Ann. tit. 13, § 8-707; La. Rev. Stat. Ann. § 9:391.1(A) (child must also be born within three years); N.D. Cent. Code § 14-20-65; Tex. Fam. Code Ann. § 160.707; Utah Code Ann. § 78B-45-707; Va. Code Ann. § 20-158(B) (child must also be born within 10 months, *cf.* § 20-164); Wash. Rev. Code § 26.26.730; Wyo. Stat. Ann. § 14-2-907; *see also* Unif. Parentage Act § 707 (amended 2002), 9B U.L.A. 53 (Supp. 2006); Restatement (Third) of Prop.: Wills & Other Donative Transfers § 2.5, cmt. *l* (1999).

None of the Probate Code provisions Vernoff cites establishes that Brandalynn was entitled to inherit under California intestacy laws at the time of the insured's death. Vernoff has also not established that the legislature intended to provide intestacy succession rights to posthumously-conceived children prior to the passage of § 249.5. While we do not generally decipher previous legislative intent based upon subsequent legislation, in this case we do have insight as to how California courts interpreted the intestacy provisions prior to the passage of § 249.5. In *Hecht v. Superior Court*, 16 Cal. App. 4th 836, 859 (Ct. App. 1993), the court awarded a decedent's frozen sperm to his girlfriend, according to the decedent's intent, partially because "it [was] unlikely that the estate would be subject to claims with respect to any such [posthumously-conceived] children." The court went on to cite the Uniform Status of Children of Assisted Conception Act (though not adopted in California), which states that " '[a]n individual who dies before implantation of an embryo, or before a child is conceived other than through sexual intercourse, using the individual's egg or sperm, is not a parent of the resulting child.' " *Id.*

**[13]** Thus, Vernoff has not established that Brandalynn was entitled to inherit under California intestacy laws at the time of the insured's death, and it is clear, following the passage of § 249.5, that current law would also prevent her from inheriting. Because she cannot meet the requirements of § 416(h)(2) of the Act, Brandalynn is not the insured's deemed legitimate child under California law, and therefore she is not deemed dependent upon him. We affirm the district court's decision to uphold the denial of benefits to Vernoff and Brandalynn.

### 5. Equal Protection Claim

Vernoff separately argues that the SSA's interpretation and application of child survivor benefits' law, which excludes some posthumously-conceived children, including Branda-

lynn, violates the Equal Protection Clause of the Fifth Amendment.[10] Vernoff's challenge is controlled by the Supreme Court's decision in *Mathews v. Lucas*, 427 U.S. 495 (1976).

**[14]** In *Lucas*, the deemed dependency provisions of § 402(d)(3) were challenged because the SSA's application of those provisions resulted in the extension of benefits only to certain classes of illegitimate children. The Court did not apply heightened scrutiny, but instead upheld the provisions under rational basis review. *Id.* at 509. Rational basis review was appropriate because the provisions did not draw a line between legitimate and illegitimate children, but rather included some illegitimate children while excluding others. *Id.* The Court accepted the SSA's uncontested view of the purpose of the Act, which "was not a general welfare provision for legitimate or otherwise 'approved' children of deceased insureds, but was intended just 'to replace the support lost by a child when his father . . . dies . . . .' " *Id.* at 507 (quoting S. Rep. No. 404, 89th Cong., 1st Sess., 110 (1965)). The Court concluded that "the statutory classifications are permissible . . . because they are reasonably related to the likelihood of dependency at death." *Id.* at 509. Moreover, the dependency presumptions were not impermissibly overinclusive, because they served the reasonable goal of "administrative convenience." *Id.*

**[15]** Similarly, here the SSA is not excluding all posthumously-conceived children, only those that do not meet the statutory requirements under State law. *See* SSAR, 70 Fed. Reg. 55,657. The presence of California Family Code § 7611(f) and California Probate Code § 249.5, demonstrate that posthumously-conceived children can be deemed legiti-

---

[10]Vernoff also challenges the interpretation of various California state law provisions as violating the Equal Protection Clause of the Fourteenth Amendment. This claim was not raised before the district court and is waived. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1488 n.4 (9th Cir. 1995).

mate, even in California, and establish eligibility for benefits under the Act. Because the SSA's interpretation does not exclude all posthumously-conceived children, we follow the Court's example in *Lucas* and apply only rational basis review. As in *Lucas*, the challenged classifications are reasonably related to the government's twin interests in limiting benefits to those children who have lost a parent's support, and in using reasonable presumptions to minimize the administrative burden of proving dependency on a case-by-case basis.

**AFFIRMED.**