Russell R. **MILLER**, Plaintiff,

v.

Michael J. **ASTRUE**, Commissioner of Social Security, Defendant.

No. CV 08–8226–RC.

United States District Court, C.D. California.

Jan. 28, 2010.

---

Brian C. Shapiro, Law Offices of Lawrence D. Rohlfing, Santa Fe Springs, CA, for Plaintiff.

Assistant US Attorney LA-CV, AUSA–Office of US Attorney, Los Angeles, CA,

Assistant US Attorney LA-SSA, Office of the General Counsel for Social Security Adm., Jean M. Turk, SAUSA–US Attorney's Office U S Department of Justice, San Francisco, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Russell R. Miller filed a complaint on December 17, 2008, seeking review of the Commissioner's decision denying his application for disability benefits. On May 20, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on June 19, 2009.

## BACKGROUND

On October 31, 2005, plaintiff, who was then 52 years old, applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since May 21, 2004, due to lead poisoning, dementia, and neuropsychological problems. Certified Administrative Record ("A.R.") 94–98, 122. The plaintiff's application was initially denied on May 11, 2006, and was denied again on April 5, 2007, following reconsideration. A.R. 64–74. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Lawrence D. Wheeler ("the ALJ") on November 13, 2007. A.R. 26–48, 75. On January 29, 2008, the ALJ issued a decision finding plaintiff is not disabled. A.R. 7–21. The plaintiff appealed the decision to the Appeals Council, which denied review on October 10, 2008. A.R. 3–6.

## DISCUSSION

### I

■ The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the decision denying plaintiff disability benefits to determine whether his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir.2009); *Vernoff v. Astrue,* 568 F.3d 1102, 1105 (9th Cir.2009). The claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

■ The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. 20 C.F.R. § 404.1520(f). If not, in **Step Five,** the burden shifts to the Commissioner to show

the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[1] *Maier v. Comm'r of the Soc. Sec. Admin.,* 154 F.3d 913, 914–15 (9th Cir.1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 21, 2004. (Step One). The ALJ then found plaintiff "has the following severe impairments: peripheral neuropathy (possibly lead toxicity related) and mild depression/dementia (also possibly related to lead toxicity)" (Step Two); however, he does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is unable to perform his past relevant work as an automobile muffler and radiator installer. (Step Four). Finally, the ALJ determined plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled. (Step Five).

## II

■ A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations. *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir.2001); *see also Valentine v. Comm'r, Soc. Sec. Admin.,* 574 F.3d 685, 689 (9th Cir.2009) (RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). Here, the ALJ found plaintiff has the RFC to:

perform medium work activity[[2]] not involving more than simple, repetitive tasks, more than frequent use of his bilateral upper and lower extremities, frequent use of his hands for fingering, handling and feeling, concentrated exposure to extreme temperatures or vibration, or more than moderate exposure to workplace hazards such as machinery or working at unprotected heights.

A.R. 16 (footnote omitted; footnote added). However, plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly rejected the opinions of examining psychologist Jennifer Watson, Ph.D. The plaintiff is correct.

Dr. Watson examined plaintiff on June 13 and July 13, 2005, conducted extensive psychological testing, including the Wech-

---

1. First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. § 404.1520a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 404.1520a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or

equals a Listing. 20 C.F.R. § 404.1520a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 404.1520a(c)(3) ]." 20 C.F.R. § 404.1520a(d)(3), (e)(2).

2. Under Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

sler Memory Scale–R, and diagnosed plaintiff as having "moderate" dementia. A.R. 185–87, 201–09. Dr. Watson found plaintiff has "multiple areas of moderate to severe cognitive compromise, including memory. There is clear decline from a previous level of higher cognitive function. Record review raises the possibility of concentration from lead exposure." A.R. 208. Dr. Watson summarized plaintiff's cognitive difficulties as:

1. Memory impairment, including impairment in verbal and nonverbal memory. Impairment includes working memory, immediate or short term memory, delayed memory, and recognition memory. Both verbal and non-verbal memory are severely impaired. Memory testing documents the presence of rapid forgetting or what is also described as an amnestic memory pattern. This type of pattern occurs in organic illness.

2. Impaired verbal fluency, including both phonemic and semantic verbal fluency. Both are severely impaired.

3. Impaired fund of word knowledge. This is moderately to severely impaired.

4. Decreased confrontation naming ability. This is in low average range.

5. Variable Executive skills, with impaired phonemic fluency . . ., slowing in cognitive processing and severely impaired multi-tasking ability.

6. Impaired calculation ability.

7. Visual-constructive skills on timed tasks (reflecting also slowing in cognitive processing speed) are in the low average range which is likely below expectation for [plaintiff] based on prior occupational skills.

8. By clinical observation, he needs to exert extreme effort on testing.

A.R. 207–08. Dr. Watson also found that plaintiff's cognitive and personality strengths included his: ability to reason about visual-spatial patterns, including the ability to organize and draw a complex figure; orientation; motivation and perseverance despite cognitive difficulties; and emotional coping, including lack of depression. A.R. 208. Subsequently, based on her 2005 examination and testing of plaintiff, Dr. Watson opined that plaintiff is unable to work because of his "severe impairment . . . in *memory* (not able to learn or recall new information), verbal fluency, and vocabulary knowledge (fund of word knowledge), and calculation ability[,]" A.R. 181, as well as his impaired "ability to sustain attention[.]" A.R. 183.

■ "[T]he ALJ may only reject . . . [an] examining physician's uncontradicted medical opinion based on 'clear and convincing reasons[,]' " *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir.2008) (citation omitted); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1298–99 (9th Cir. 1999); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir.2008).

■ Here, the ALJ rejected Dr. Watson's opinions, stating:

Dr. Watson apparently administered various psychological tests in which the claimant achieved "compromised" and/or "borderline" results in various areas of memory functioning. Without giving specific examples or observations, Dr. Watson noted that the claimant has severe memory problems impacting his ability to learn or recall new information, his verbal fluency and ability to perform calculations. However, she noted the claimant displayed no signs of depression, anxiety, or psychosis and, although she noted that the claimant's cognitive problems impact his ability to

perform daily functions, no specific examples, complaints or observations were noted. As such, Dr. Watson diagnosed the claimant with moderate dementia and assessed him as unable to work. . . . [¶] A statement by any physician that the claimant is disabled or unable to work is a conclusion on the ultimate issue to be decided, however, and is not binding in reaching a determination as to whether the claimant is disabled within the meaning of the Social Security Act.

A.R. 14. Although the ALJ is " 'not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so.' " *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir.1998) (citations omitted). Here, the ALJ's circular reasoning does not constitute a specific and legitimate reason for rejecting Dr. Watson's opinions. Moreover, the ALJ is wrong. Dr. Watson **gave** (not "apparently") plaintiff a battery of psychological tests and listed plaintiff's scores on those tests, A.R. 185–7, and then set forth the medical implications and conclusions drawn from those tests, as is appropriate. A.R. 180–4, 201–9. In discussing the implications of plaintiff's test results, Dr. Watson stated, for instance:

> [The plaintiff] has difficulty learning and recalling new information. He benefits little if at all from repetition, cueing, and recognition in increasing his memory. [¶] He was only able to repeat 3 digits backward (Digit Span), often viewed as an index of working memory, this score is far below expectation. [¶] He was unable to learn or recall two stories (Logical Memory I and II, 0 out of 75 story elements and 0 out of 50 story elements, respectively) with both scores falling in the first percentile or compromised range. [¶] Compromise is documented in his ability to learn and recall

> novel words [sic] pairs (Verbal Paired Associates I and II).[¶] Compromise is also documented in his ability to learn and recall a long list of 15 words. He was given 5 trials to learn this list. He learned 3, 2, 4, 3, and 4 out of 15 of the words across the five learning trials. He could only recall 2 of the words upon brief delay and one upon long delay and could only recognize three of the words when verbally presented a list to sort them out of. Thus compromise is documented in verbal memory testing.[¶] To further assess memory function, he was asked to draw and then later recall a complex design. Delayed recall again fell in the compromised range as he could only recall 8 out of 36 elements both on brief and long delay (first percentile, compromised). Thus nonverbal memory is impaired. [¶] [The plaintiff] was given the Paced Auditory Serial Addition Test. . . . This test combines cognitive processing speed with calculation ability, and assesses the impact of multitasking on memory function. Impairment was again documented with his scores falling on both the three second and two second trials in the compromised range (1st percentile).

A.R. 206.

The ALJ also rejected Dr. Watson's opinions for the following reasons:

> [T]he claimant has never sought out or required ongoing mental health treatment or psychiatric medications. Although Dr. Watson noted that the claimant has severe memory problems impacting his ability to learn or recall new information, his verbal fluency and ability to perform calculations, no specific examples or observations were cited and Dr. Watson admits that she is not a treating source but only saw the claimant on a single occasion. . . . Although the claimant showed some gen-

uine signs of impaired memory and concentration during Dr. Donohue's examination, as noted above, the claimant denied having any trouble performing daily living activities or experiencing depression, anxiety, or similar psychiatric problems. [¶] At the hearing, the claimant's thoughts did not seem to wander and all questions were answered alertly and appropriately. . . . A.R. 19. As discussed above, the record does not support the ALJ's conclusion that Dr. Watson cited no examples or observations. Moreover, the ALJ's disparagement of Dr. Watson's opinions because she is not a treating physician is contrary to the law, and "ignores the well-established [Social Security] distinction between an examining and a treating doctor. Like the doctor[ ] who examined [plaintiff] at the Commissioner's request, Dr. [Watson] was neither asked, nor paid, to provide treatment for [plaintiff], but rather to give an objective opinion about [plaintiff's] medical condition." [3] *Regennitter*, 166 F.3d at 1299. Similarly, the ALJ's rejection of Dr. Watson's opinions because plaintiff "has never sought out or required ongoing mental health treatment or psychiatric medications[,]" A.R. 19, has specifically been criticized by the Ninth Circuit "because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.' " *Regennitter*, 166 F.3d at 1299–1300 (citations omitted).

■ Finally, in noting "[a]t the hearing, the claimant's thoughts did not seem to wander and all questions were answered alertly and appropriately[,]" [4] the ALJ acted as his own medical expert, substituting his opinion for Dr. Watson's professional interpretation of the clinical testing, which is improper. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (As a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms."); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (" '[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . .' " (citations omitted)); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) (ALJ may not substitute his interpretation of laboratory reports for that of physician).

■ "Because the ALJ failed to provide adequate reasons for rejecting Dr. [Watson's] opinion[s], [this Court] credit[s] [them] as a matter of law." *Widmark*, 454 F.3d at 1069; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir.2004). Crediting

---

**3.** The dismissal of Dr. Watson's opinions on this ground is particularly ironic here where the ALJ relied on the opinions of examining psychologist Margaret A. Donohue, Ph.D., and nonexamining psychiatrist M.G. Salib, M.D., to determine plaintiff is not disabled. A.R. 14–15, 19, 231–35, 244–61.

**4.** To the extent the Commissioner posits other reasons for the ALJ's rejection of Dr. Watson's opinion, since the ALJ did not rely on such reasoning in finding plaintiff not disabled, the Court cannot consider the Commis-

sioner's post hoc rationale. *See Bray v. Astrue*, 554 F.3d 1219, 1225–26 (9th Cir.2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

the limitations Dr. Watson found, it is clear that substantial evidence does not support the RFC assessment, *Widmark,* 454 F.3d at 1070, "[n]or does substantial evidence support the ALJ's step-five determination, since it was based on this erroneous RFC assessment." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007).

## III

When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir.2002). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke,* 379 F.3d at 593; *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). Here, this matter must be remanded for the redetermination of Step Five, in light of the limitations Dr. Watson found. *Widmark,* 454 F.3d at 1070; *Harman,* 211 F.3d at 1180.

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.