**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STERLING WIDMARK,
          *Plaintiff-Appellant,*

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,
          *Defendant-Appellee.*

No. 04-35952

D.C. No.
CV-03-01057-JMS

OPINION

Appeal from the United States District Court
for the District of Oregon
Janice M. Stewart, Magistrate, Presiding

Submitted December 9, 2005\*
Portland, Oregon

Filed July 26, 2006

Before: James R. Browning, Dorothy W. Nelson, and
Diarmuid F. O'Scannlain, Circuit Judges.

Opinion by Judge Browning;
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

---

\*The panel unanimously finds this case suitable for decision without
oral argument. Fed. R. App. P. 34(a)(2).

## COUNSEL

Tim Wilborn, West Linn, Oregon, for the plaintiff-appellant.

Robert D. McCallum, Jr., Assistant Attorney General, Karin J. Immergut, United States Attorney, Craig J. Casey, Assistant United States Attorney, Lucille Gonzales Meis, Region X

Chief Counsel, Stephanie R. Martz, Assistant Regional Counsel, Seattle, Washington, for the defendant-appellee.

## OPINION

BROWNING, Circuit Judge:

Sterling Widmark appeals a decision of the district court affirming the Social Security Commissioner's ("Commissioner") denial of benefits. An Administrative Law Judge ("ALJ") found Widmark, though severely impaired, had the residual functional capacity ("RFC") for the full range of light work. Widmark argues that, in reaching his decision, the ALJ rejected the medical opinion of an examining physician without offering adequate reasons. Widmark also claims the ALJ erred in using the Medical-Vocational Guidelines in making his disability determination.

We have jurisdiction under 28 U.S.C. § 1291, and we hold that the ALJ improperly rejected the examining physician's opinion regarding Widmark's thumb. We also hold that this error made the ALJ's use of the Medical-Vocational Guidelines in his final disability determination improper. Therefore, we reverse and remand for proceedings consistent with this opinion.[1]

### I.

Widmark applied for Disability Insurance Benefits and Supplemental Security Income on December 9, 1998, claiming disability with an onset date of May 1, 1997, due to back and neck pain. Both applications were denied.

---

[1]By memorandum disposition filed herewith, we affirm the district court's judgment as to all other issues Widmark raises on appeal.

For a review hearing before an ALJ on April 17, 2000, Widmark presented, among other evidence, a Physical RFC Assessment Form, dated August 14, 1999, filled out by a state agency physician, who indicated that Widmark had no manipulative limitations by checking a box on the standardized form. The physician noted that he had seen the report of another physician who previously examined Widmark for his back injury but did not otherwise explain how he arrived at his conclusion about Widmark's manipulative ability.

Following the hearing, the ALJ denied Widmark's application. Widmark requested review. The Appeals Council granted Widmark's request and, by order dated August 3, 2001, remanded to the ALJ for further development of Widmark's subjective complaints.

On remand, Widmark presented, among other evidence, a disability examination report, dated August 21, 2002, signed by Dr. Delmar Greenleaf, an orthopedist. Dr. Greenleaf conducted a "comprehensive orthopedic examination," during which he observed that Widmark was "able to do pincher grasp and make an 'okay' sign" and "grasp and manipulate articles" with his right hand, but he could not flex the interphalangeal joint of his right thumb. Dr. Greenleaf concluded that, due to a past flexor tendon laceration, the range of motion in Widmark's right thumb was "definitely abnormal." In the assessment form accompanying his report, Dr. Greenleaf indicated that Widmark's thumb injury limited his ability to perform fine manipulation.

The ALJ once again denied Widmark's application for benefits. In determining Widmark's RFC, the ALJ found that Widmark was "physically restricted to light work activity on a sustained basis" and was, therefore, unable to perform his past relevant work operating heavy machinery. The ALJ also found, however, that Widmark suffered from "no significant, documented nonexertional limitations" and was thus able to perform "the full range of light work." Applying the Medical-

Vocational Guidelines to determine Widmark's final disability status, the ALJ concluded that Widmark could engage in substantial gainful employment and, therefore, was not disabled as defined by the Social Security Act.

The Appeals Council denied Widmark's request for review, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 404.981. Widmark appealed to the district court where, in August 2004, United States Magistrate Judge Janice M. Stewart affirmed. This timely appeal followed.

## II.

"We review de novo the district court's order affirming the Commissioner's denial of benefits. We will overturn the Commissioner's decision if it is not supported by substantial evidence or is based on legal error." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citations omitted). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion. *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While inferences from the record can constitute substantial evidence, only those "reasonably drawn from the record" will suffice. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## III.

## A.

Widmark argues that the ALJ erred in making his RFC determination by ignoring Dr. Greenleaf's opinion that his thumb injury limited his ability to do fine manipulation.

[1] "[T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. . . . [T]he opinion of an examining doc-

tor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (citations and internal quotation marks omitted).

**[2]** As to whether the "clear and convincing" or "specific and legitimate" standard applies in Widmark's case, we note that the ALJ found only that "[n]o other physician has cited any significant restrictions related to right thumb impairment." Of course, the mere absence of a corroborating opinion cannot in itself constitute a conflict among the medical opinions. But a fair reading of the record reveals that Dr. Greenleaf's opinion is inconsistent with the brief, conclusory opinion of the state agency reviewing physician, who indicated that Widmark had no manipulative limitations by checking a box on a standardized RFC assessment form.[2] Thus, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence in the record before rejecting Dr. Greenleaf's opinion. *See Lester*, 81 F.3d at 830.

**[3]** The ALJ offered three reasons for rejecting Dr. Greenleaf's medical opinion of Widmark's ability to do fine manipulation: (1) Dr. Greenleaf himself had concluded Widmark's manipulation ability was not limited; (2) the record contained no other thumb opinion; and (3) Widmark himself did not mention the injured thumb in connection with his disability claim. We hold that none of these reasons was legally adequate for rejecting Dr. Greenleaf's opinion.

**[4]** First, to the extent the ALJ rejected Dr. Greenleaf's

---

[2]Although this opinion may suffice to establish a conflict among the medical opinions, it alone cannot constitute substantial evidence for rejecting Dr. Greenleaf's opinion. *See Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.").

opinion based on his interpretation that Dr. Greenleaf "concluded that the claimant was not restricted as to grasping and manipulation with the hands," the decision was not supported by substantial evidence. While Dr. Greenleaf's report states that Widmark "can grasp and manipulate articles in his right and left hand," the same report, when viewed in its entirety, indicates that Dr. Greenleaf found Widmark's ability to do fine manipulation was restricted. For example, Dr. Greenleaf wrote that Widmark's "interphalangeal joint on his right thumb . . . was stuck in extension and would not flex at all" and that Widmark "does have flaccid paralysis, tendon laceration and dysfunction of his right thumb." Furthermore, on an evaluation chart accompanying the report, Dr. Greenleaf indicated that the range of motion in the interphalangeal joint of Widmark's right thumb is zero degrees, i.e., he is entirely unable to bend it. Finally, in the accompanying Medical Source Statement of Widmark's ability to do physical work-related activities, Dr. Greenleaf indicated that Widmark could only occasionally perform fingering and added the following note: "The Flexor tendon laceration on [right] thumb limits his Fine Fingering abilities." Thus, a thorough and fair reading of Dr. Greenleaf's report shows that he concluded Widmark's ability to do fine manipulation was limited by his thumb injury. Any interpretation otherwise would not be supported by substantial evidence in the report. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (holding that the ALJ failed to provide substantial evidence for rejecting a psychologist's examination report where, *inter alia*, the ALJ "selectively focused on aspects of [the] report which tend[ed] to suggest non-disability").

**[5]** The ALJ's second reason for rejecting Dr. Greenleaf's opinion was that "[n]o other physician has cited any significant restrictions related to right thumb impairment." This merely states a fact and does not explain—specifically and legitimately or otherwise—how that fact leads to the conclusion that Dr. Greenleaf's evaluation should be disregarded.

Nor can this conclusion be supported by substantial evidence in the record. To reject Dr. Greenleaf's thumb opinion based on the absence of another thumb opinion in the record, the ALJ would have had to infer from this absence that Widmark's other examining physicians did not comment on any restriction in his ability to do fine manipulation because none existed. This inference would, in turn, require the further inference that it would be reasonable to expect Widmark's examining physicians to have tested the range of motion in his thumb. But such an inference cannot reasonably be drawn from the relevant facts in the record. Those facts are that Widmark's alleged basis for his disability claim was severe neck and back pain and that the reports of Widmark's other examining physicians all indicate he visited them for his neck and back, either to be examined for the purpose of evaluating his disability claim or for pain management.[3] It is reasonable, based on these facts, to expect that Widmark's examining physicians focused their attention on the subject of his complaint, i.e., his neck and back. But just as no reasonable person would expect a podiatrist seeing a patient who complains of foot problems to thoroughly examine the full range of that patient's hearing, it is unreasonable to expect Widmark's examining physicians undertook a thorough range of motion evaluation of Widmark's right thumb. That Dr. Greenleaf, an orthopedist, offered the thumb opinion here does not undercut

---

[3]In making its RFC determination, the ALJ relied on the reports of three doctors: the state agency reviewing physician; Dr. Williams, an orthopedist; and Dr. Carroll, a pain management specialist. The General Medical Evaluation form completed by Dr. Williams indicated that Widmark complained of neck pain, kidney damage, and chronic lower back pain. That form listed eighteen different areas of examination, only one of which might have covered manipulation impairments. That examination, entitled "Musculo-Skeletal," was one of four areas not marked as normal. Dr. Carroll's report stated that she saw Widmark "for an evaluation of his chronic pain, specifically, a question regarding his medication." The subsequent summary of her physical examination does not indicate that she examined the range of motion in Widmark's thumb or his ability to do fine manipulation.

this conclusion. In offering his assessment of Widmark's limited ability to use his thumb, Dr. Greenleaf simply exceeded the reasonable expectations of what an orthopedist charged with evaluating a disability applicant's claims of debilitating neck and back pain would cover during a routine examination. Because the ALJ's second reason for rejecting Dr. Greenleaf's thumb opinion rests on an inference that cannot be reasonably drawn from the record, substantial evidence does not support it. *See Batson*, 359 F.3d at 1193.

**[6]** The only remaining reasons the ALJ gave in his decision—that Widmark failed to "allege[ ] significant problems" with his thumb or to "indicat[e] that any such problems interfered with his function in the past"—do not reasonably support the inference that Widmark's ability to do fine manipulation was not limited by his thumb. Again, the record shows that Widmark consistently alleged disability based on injuries to his neck and back. Given this basis, it is unreasonable to infer solely from his failure to mention the injured thumb in his benefits application that it did not hinder his ability to do fine manipulation.

**[7]** Indeed, we find that the ALJ's reliance on Widmark's failure to mention a physical problem unconnected to the basis for his alleged disability is especially unreasonable in light of the ALJ's special duties with regard to developing the record. Of course, Widmark is ultimately responsible for providing the evidence to be used in making the RFC finding. *See* 20 C.F.R. §§ 404.1512(c); 404.1545(a)(3). But the ALJ should not be "a mere umpire" during disability proceedings. *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). Rather, the ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This is particularly true where, as here, the claimant was not represented by counsel. *Higbee*, 975 F.2d at 561 (quoting *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978), for the proposition that where the claimant is not represented, "it is incum-

bent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to remain "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited") (citations and internal quotation marks omitted)). Despite this duty, the ALJ—though authorized to do so under 20 C.F.R. § 404.1512(e)—never sought additional evidence to fill this perceived gap in the record. Nor did the ALJ at any time during Widmark's three hearings ever question Widmark specifically about his thumb. In fact, the only effort the ALJ made to develop a full and fair record with regard to Widmark's ability to do fine manipulation was during the first hearing, before remand, when he asked Widmark, "Is there anything else you want to tell me about your health or your working capabilities that you think might be important for me to know?" No ALJ could reasonably believe that this single, open-ended question was adequate to elicit the sort of information necessary to fully and fairly develop the record and to properly protect Widmark's interests. This is especially so because an unrepresented claimant like Widmark can hardly be expected to realize a thumb injury is relevant to his RFC determination and thus critical to mention. Accordingly, it was unreasonable for the ALJ to infer that Widmark's thumb did not limit his ability to do fine manipulation from Widmark's failure to provide information the relevance of which the ALJ was in a better position to know and the existence of which he was in part responsible for verifying.

**[8]** In conclusion, we hold that the ALJ's reasons for rejecting Dr. Greenleaf's thumb opinion are not supported by substantial evidence in the record or reasonable inferences drawn therefrom. Therefore, we cannot affirm his decision. *See Lester*, 81 F.3d at 830-31.[4]

---

[4]The Commissioner argues that the ALJ's failure to consider Dr. Greenleaf's thumb limitation opinion is harmless error since that opinion is consistent with the ALJ's RFC finding. We do not agree. Because, as discussed below, the ALJ's error in rejecting Dr. Greenleaf's thumb opin-

B.

**[9]** Because the ALJ failed to provide adequate reasons for rejecting Dr. Greenleaf's opinion, we credit it as a matter of law. *See Edlund*, 253 F.3d at 1160 (citing *Lester*, 81 F.3d at 834). Doing so makes the ALJ's use of the Medical-Vocational Guidelines to determine Widmark's ability to adjust to other work reversible error.

**[10]** Where, as here, a claimant carries his burden of establishing he is unable to perform his past relevant work, the ALJ bears the burden of establishing the claimant can adjust to other work. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The ALJ can satisfy this burden by taking the testimony of a vocational expert or by using the Medical-Vocational Guidelines. *Id.* at 1101. However, the ALJ may rely on the Guidelines alone "only when the [Guidelines] accurately and completely describe the claimant's abilities and limitations." *Id.* at 1102 (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)); *see also* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00(a), (e).

Had the ALJ credited Dr. Greenleaf's opinion that Widmark's thumb restricted his ability to perform fine manipulation, his RFC finding would not have coincided exactly with the "full range" of light work. The full range of light work includes unskilled, sedentary jobs. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are

---

ion ultimately led to an adverse disability finding, it was not harmless. *Cf. Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding that an erroneous finding that claimant was 50 rather than 53 was harmless since, at either age, claimant fell into same Medical-Vocational Guidelines category); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (holding that an unnecessary application of the Medical-Vocational Guidelines was harmless where ALJ's decision was supported by substantial evidence).

additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."); 20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.00(a) (providing that the full range of light work "includes the functional capacity to perform sedentary as well as light work"). "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10, 1983 WL 31251, at *5. Crediting Dr. Greenleaf's opinion would therefore have necessitated finding that Widmark's ability to perform many unskilled, sedentary jobs was limited. *See id.*; *see also* SSR 85-15, 1985 WL 56857, at *7 ("[T]he loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work.").

[11] Such a finding would have fallen outside the exact criteria used in the Guidelines, barring the ALJ from relying on them alone and requiring the testimony of a vocational expert. *See Tackett*, 180 F.3d at 1103-04; *Jones*, 760 F.2d at 998 (explaining that the Guidelines may not be used alone where a claimant has a non-exertional, e.g., manipulative, impairment limiting his ability to work); *see also* SSR 85-15, 1985 WL 56857, at *7 ("The varying degrees of loss [of fine manual dexterity] which can occur may require a decision-maker to have the assistance of a V[ocational] S[pecialist]."). Therefore, the ALJ was not permitted to use the Medical-Vocational Guidelines without the testimony of a vocational expert. *Tackett*, 180 F.3d at 1104; *Jones*, 760 F.2d at 998.

IV.

[12] The ALJ improperly rejected Dr. Greenleaf's medical opinion that Widmark's ability to do fine manipulation was limited. As a result, he improperly used the Medical-Vocational Guidelines to make the final disability determination. Accordingly, we reverse the district court's judgment and remand with instructions to remand to the Commissioner

for further administrative proceedings consistent with this opinion.

**REVERSED** on the issues discussed in this opinion and **REMANDED**.

---

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the court's conclusion that the ALJ failed to give specific legitimate reasons based on substantial evidence to support his conclusion that the thumb abnormality Dr. Greenleaf observed did not significantly limit the range of work permitted by Widmark's exertional limitations. Indeed, I am persuaded that substantial evidence supports denial of Widmark's application for Disability Insurance Benefits and Supplemental Security Income.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Under this standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." *Id*. "[T]he court may not substitute its judgment for that of the Commissioner." *Edlund*, 253 F.3d at 1156.

In situations of conflicting medical evidence, such as this one, the ALJ, not a reviewing court, is charged with determining credibility and resolving the conflict. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). We must defer to the ALJ's decision to reject the opinion of a treating physician in favor of the conflicting opinion of an

examining physician if the ALJ sets forth specific legitimate reasons based on substantial evidence in the record. *Id.* In this case, Dr. Greenleaf observed that although Widmark "can still grasp and manipulate articles in his right and left hand" and can "do pincher grasp and make an 'okay' sign," his flexor tendon laceration on his right thumb "limits his fine fingering abilities." The state agency physician concluded, however, that Widmark had no manipulative limitations. In resolving this conflict, the ALJ articulated the following reasons for concluding that Widmark's manipulative limitations were not significant:

> At one point, Dr. Greenleaf assessed laceration affecting the claimant's right thumb, but he concluded that the claimant was not restricted as to grasping and manipulation with the hands. No other physician has cited any significant problems related to right thumb impairment, claimant has not alleged significant problems related to that type of condition, and there is no indication that any such problem interfered with his functioning in the past.

The majority labels these reasons for concluding that Widmark's thumb does not significantly limit the range of work permitted by Widmark's exertional limitations not "legitimate" because (1) in the majority's view, Dr. Greenleaf's report both supported and undercut the existence of a significant manipulative limitation, (2) Widmark's other treating physicians had no occasion to notice a significant manipulative limitation, and (3) we cannot expect Widmark to realize that his thumb limitation, if significant, would be relevant to the ALJ's determination of his residual functional capacity.

I cannot agree with the majority's conclusion that the ALJ misread Dr. Greenleaf's report. To the contrary: it appears that the ALJ carefully read the report, acknowledged the existence of a thumb limitation, and reasonably concluded that, in Dr. Greenleaf's view, the limitation was not significant. Dr.

Greenleaf's letter, written for the purpose of informing the disability examiner of Widmark's limitations, concludes that Widmark "can still grasp and manipulate articles in his right and left hand" and can "do pincher grasp and make an 'okay' sign." In my view, this description of Widmark's abilities is sufficient to support the ALJ's conclusion that Widmark "was not restricted as to grasping and manipulation with the hands." The ALJ could reasonably conclude that Dr. Greenleaf did not think the thumb abnormality was a significant problem.

Furthermore, there is no evidence in the record indicating that Widmark's thumb injury has interfered with his past functioning. Widmark, who is now represented by counsel, does not contend that the ALJ should have asked him more detailed questions to elicit testimony about his thumb injury or that the ALJ otherwise shirked his duty to develop the record. As the majority acknowledges, even though Widmark was not represented by counsel before the ALJ, he was responsible for providing evidence for the ALJ to use in assessing his vocational limitations. *See* 20 C.F.R. §§ 404.1545(a)(3); 404.1512(c).

Because I would hold that the ALJ did not err by concluding that Widmark's thumb abnormality is not a substantial vocational limitation, I also dissent from the court's conclusion that the ALJ improperly applied the Medical-Vocational Guidelines. *Tackett v. Apfel,* 180 F.3d 1094, 1102 (9th Cir. 1999) (application of the grids is appropriate when the claimant's non-exertional limitations do not significantly limit the range of work permitted by his exertional limitations).

I would affirm the district court's opinion and order.