**Amy LEDESMA, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

No. EDCV 08–1135–RC.

United States District Court, C.D. California.

Nov. 23, 2009.

Bill Latour, Bill Latour Law Offices, Loma Linda, CA, for Plaintiff.

Assistant US Attorney LA–CV, AUSA–Office of US Attorney, Los Angeles, CA, Assistant US Attorney LA–SSA, Office of the General Counsel for Social Security Adm., Nancy M. Lisewski, U.S. Attorney's Office, U.S. Department of Justice, San Francisco, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Amy Ledesma filed a complaint on September 3, 2008, seeking review of the Commissioner's decision denying her application for disability benefits. On February 17, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on April 15, 2009.

## BACKGROUND

### I

On August 25, 2006 (protective filing date), plaintiff applied for disability bene-

fits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and the Supplemental Security Income program of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since March 3, 2006, due to bipolar disorder. Certified Administrative Record ("A.R.") 8, 90. The plaintiff's application was initially denied on February 20, 2007, and, following reconsideration, was denied again on August 20, 2007. A.R. 8. The plaintiff then requested an administrative hearing, which was held on March 6, 2008, before Administrative Law Judge Mason D. Harrell, Jr. ("the ALJ"). A.R. 16–44. On April 4, 2008, the ALJ issued a decision finding plaintiff is not disabled. A.R. 6–15. The plaintiff appealed this decision to the Appeals Council, which denied review on July 3, 2008. A.R. 1–3.

## II

The plaintiff, who was born on July 22, 1968, is currently 41 years old. A.R. 14, 99, 122. She has a 12th-grade education with one year of business college, and previously worked as a receptionist and as a waitress. A.R. 26, 91, 93, 120.

Plaintiff was treated at the Riverside County Department of Mental Health ("RCDMH") from February 1, 2006, to February 13, 2008. A.R. 150–208, 233–38. Her primary treating physician was Bruce Bogost, M.D.,[1] A.R. 150–51, 154, 178, 182, 185, 188, 196, 203, 206–07, who diagnosed

plaintiff as having bipolar II disorder and polysubstance dependence. See A.R. 150–51, 182, 196. Dr. Bogost and others prescribed several medications to plaintiff, including Zoloft,[2] Depakote,[3] and Seroquel.[4] A.R. 150–51, 153, 178, 203, 206, 236. On September 28, 2006, Dr. Bogost opined plaintiff: was paranoid and suffered from delusions; had a "mild" impairment of her memory and judgment; showed evidence of insomnia, depression and anxiety; was unable to maintain a sustained level of concentration, perform repetitive tasks for an extended period, or adapt to new or stressful situations; could not interact appropriately with strangers, coworkers or supervisors; was fearful and anxious; and needed assistance in keeping appointments. A.R. 151. Dr. Bogost further opined plaintiff could not complete a 40–hour work week without decompensating, and her prognosis was guarded. Id.

On September 4, 2006, Eugene Hu, M.D., an attending physician at Riverside County Regional Medical Center, noted plaintiff appeared to be using cocaine, amphetamine and heroin, and cleared plaintiff for entry into a "detox" program. A.R. 122–23. J. Robinson, L.V.N., noted plaintiff was on Methadone, was "shaky," and admitted using heroin the day before and showed "numerous scarred tract & prior abscess looking sites on [her] body." A.R. 124, 126.

---

1. Dr. Bogost was a treating physician, although plaintiff refers to him as a "consultative examiner." Jt. Stip. at 12:12–13. See, e.g., Le v. Astrue, 529 F.3d 1200, 1201–02 (9th Cir.2008) (physician who saw claimant five times in three years for treatment was treating physician); Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir.1994) (physician who saw claimant twice within 14 months and prescribed medication was treating physician).

2. Zoloft, also called Sertraline, "is prescribed for major depression—a persistently low

mood that interferes with everyday living." The PDR Family Guide to Prescription Drugs at 612, 763 (8th ed. 2000).

3. Among other uses, "Depakote ... [is] used to control the manic episodes—periods of abnormally high spirits and energy—that occur in bipolar disorder (manic depression)." Id. at 194.

4. "Seroquel combats the symptoms of schizophrenia, a mental disorder marked by delusions, hallucinations, disrupted thinking, and loss of contact with reality." Id. at 610.

On February 10, 2007, psychiatrist Romualdo R. Rodriguez, M.D., examined plaintiff, A.R. 127–35, and noted she was not under the influence of drugs at the time. A.R. 130. Dr. Rodriguez found plaintiff: had "coherent and organized" though processes and was not delusional; had "no current suicidal, homicidal or paranoid ideation"; described "her mood as euthymic"; was "polite, serious and relaxed" and not "tearful"; although feeling "helplessness and hopelessness at times, [plaintiff does] not [feel] worthless and guilty"; was "alert and oriented ... [and] appears to be of at least average intelligence"; "could recall three items immediately and two items after five minutes"; "could perform serial threes [and] ... can correctly and quickly complete simple mathematic problems"; and "was able to follow ... conversation well." A.R. 130–31. Nevertheless, Dr. Rodriguez found plaintiff's "[i]nsight into her problems is very problematic," and determined plaintiff was "still actively using drugs illegally and not getting proper care for her mental health issues." A.R. 132. Dr. Rodriguez diagnosed plaintiff with: post-traumatic stress disorder, attention deficit hyperactivity disorder (ADHD) and polysubstance dependence, and he determined her Global Assessment of Functioning (GAF) was 60.[5] Id. Dr. Rodriguez opined that, "if [plaintiff] stopped all illegal drugs and [was] properly treated for ADHD and/or any other mood disorders she may have, she could easily recover from her problems within twelve months." A.R. 133. Dr. Rodriguez found plaintiff was: (1) "[a]ble to understand, remember and carry out *simple* one or two step job instructions"; (2) "[a]ble to do detailed and *complex* instructions"; (3) "[s]lightly limited in her ability to relate and interact with supervisors, coworkers and the public"; (4) "[m]oderately limited in her ability to maintain concentration and attention, persistence and pace"; (5) "[s]lightly limited in her ability to associate with day-to-day work activity, including attendance and safety"; (6) "[s]lightly limited in her ability to adapt to the stresses common to a normal work environment"; (7) "[s]lightly limited in her ability to maintain regular attendance in the work place and perform work activities on a consistent basis"; and (8) "[s]lightly limited in her ability to perform work activities without special or additional supervision." A.R. 133–34.

On February 15, 2007, nonexamining psychiatrist Barbara A. Smith, M.D., opined plaintiff suffers from an affective disorder and a polysubstance dependence, and determined plaintiff's impairments were not severe. A.R. 136–46. Dr. Smith opined plaintiff has: (1) "mild" restriction of activities of daily living; (2) "marked" difficulties in maintaining social functioning; (3) "marked" difficulties in maintaining concentration, persistence or pace; and (4) three episodes of decompensation, each of extended duration. A.R. 144. Dr. Smith found plaintiff's drug abuse and alcoholism were material and without those conditions, plaintiff's "impairment [would] not [be] severe[,]" and plaintiff would have no restriction in activities of daily living, no difficulties in maintaining social functioning, "mild" difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. A.R. 144, 146.

On May 3, 2007, Dr. Bogost, who had not seen plaintiff since December 7, 2006,

---

**5.** A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. (Text Revision) 2000).

opined plaintiff: showed no signs of psychosis and her memory was intact; had mildly impaired judgment; showed evidence of confusion, depression and anxiety and showed negative symptoms for apathy; could maintain a sustained level of concentration, but could not adapt to new or stressful situations; could not interact appropriately with family, strangers, co-workers or supervisors; was hostile, fearful and anxious; and needed assistance in keeping appointments. A.R. 150. Dr. Bogost again opined plaintiff could not complete a 40–hour work week without decompensating, and that her prognosis was guarded. *Id.*

On February 13, 2008, an unidentified physician at RCDMH diagnosed plaintiff as having an unspecified mood disorder and heroin and methamphetamine dependence. A.R. 238. He/she opined that plaintiff: showed evidence of insomnia, depression, anxiety and compulsive behaviors, as well as impaired judgment and concrete thought patterns; showed no ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or adapt to new or stressful situations; showed no ability to interact appropriately with family, strangers, co-workers or supervisors; needed assistance with hygiene, and was unable to manage funds in her best interest; "missed her appointments and has refused to go for lab work," and her prognosis was "chronic." *Id.*

Medical expert Joseph M. Malancharuvil, Ph.D., testified at the administrative hearing that plaintiff has a mixed substance abuse disorder, an organic affective disorder with bipolar features secondary to substance abuse, and a personality disorder, not otherwise specified. A.R. 26–36. Dr. Malancharuvil opined that her mental limitations would be "marked" if she's intoxicated, but, if not abusing drugs, she would have only a "mild" limitation in her activities of daily living, "mild" difficulty maintaining social functioning, "mild-to-moderate" difficulties maintaining concentration, persistence or pace, and no episodes of decompensation. A.R. 28–29. Dr. Malancharuvil further opined plaintiff is restricted to simple work, up to four to five-step instructions with no excessive speed requirements, and she should not be involved in safety operations or operate hazardous machinery. A.R. 29–31.

## DISCUSSION

### III

■■■■ This Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir.2009); *Vernoff v. Astrue,* 568 F.3d 1102, 1105 (9th Cir.2009). "In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater,* 157 F.3d 715, 720 (9th Cir.1998); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir.2007); *Holohan v. Massanari,* 246 F.3d 1195, 1201 (9th Cir.2001). "Where the evidence can reasonably support either affirming or reversing the decision, [this Court] may not substitute [its] judgment for that of the Commissioner." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1205 (9th Cir.2008) (quoting *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir.2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 1068, 169 L.Ed.2d 808 (2008)); *Vasquez,* 572 F.3d at 591.

■ The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996); *see also Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 689 (9th Cir.2009) ("To establish eligibility for Social Security benefits, a claimant has the burden to prove he is disabled.").

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. §§ 404.1520, 416.920. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Moreover, where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.[6] *Maier v. Comm'r of the Soc. Sec. Admin.,* 154 F.3d 913, 914–15 (9th Cir.1998) (per curiam).

■ However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir.2001); *Parra,* 481 F.3d at 746. Rather, the Act provides that "[a]n individual shall not be considered disabled ... if alcoholism or drug addiction would ... be a contributing factor

---

**6.** First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2–4), 416.920a(c)(2–4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3) ]." 20 C.F.R. §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

For claimants such as plaintiff, who have substance abuse dependency, the ALJ "must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935." *Bustamante*, 262 F.3d at 955 (citations omitted); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir.2003) ("The plain text of the relevant regulation requires the ALJ first to determine whether [the claimant] is disabled ... without segregating out any effects that might be due to substance use disorders ....'" (citations and footnote omitted)); *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir.2001) ("The implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C). The [ALJ] must first make a determination that the claimant is disabled." (citation omitted)). Then the ALJ "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."[7] 20 C.F.R. §§ 404.1535(a), 416.935(a); *see also Brueggemann*, 348 F.3d at 694–95 ("If the gross total of a claimant's limitations, including the effect of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent."); *Drapeau*, 255 F.3d at 1214 ("[The ALJ] must then make a determination whether the claimant would still be found disabled if he

or she stopped abusing alcohol [ or drugs].").

Applying the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. (Step One). The ALJ then found plaintiff has the following "severe combinations of impairments: mixed substance addiction disorder, substance induced organic affective disorder with bipolar features, generalized anxiety disorder, and personality disorder, not otherwise specified"; however, plaintiff does not have a severe physical impairment. (Step Two). The ALJ then found plaintiff's "impairments, including the substance use disorders," meet the requirements of Listing nos. 12.02, 12.06, 12.08 and 12.09. (Step Three). Having concluded plaintiff is disabled when her substance abuse is considered, the ALJ next addressed whether plaintiff's substance abuse is a contributing factor material to the disability determination. The ALJ found that if plaintiff stopped her substance abuse, she would continue to have a severe impairment or combination of impairments (Step Two); however, she would not have an impairment or combination of impairments that meets or equals a listed impairment. (Step Three). The ALJ then concluded that even if plaintiff stopped her substance abuse, she would be unable to perform her past relevant work. (Step Four). Finally, the ALJ determined that if plaintiff stopped her substance abuse, there are a significant number of jobs in the national economy she can perform; therefore, she is not disabled. (Step Five).

## IV

■ A claimant's residual functional capacity ("RFC") is what she can still do

---

7. "The 'key factor ... in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability' is whether an individual would still be found disabled if [he] stopped using alcohol or drugs." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir.1998) (citation omitted); 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

despite her physical, mental, nonexertional, and other limitations. *Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir.2001); *see also Valentine,* 574 F.3d at 689 (The RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). Here, the ALJ found that if plaintiff "stopped the substance use," she would retain the following RFC:

> to perform light work[8] ... except work involving more than simple tasks, i.e., more than four to five steps of instructions, any rapid, assembly-line-type work, any significant responsibility for the safety of others, or any significant hypervigilance.

A.R. 12 (footnote added). However, plaintiff contends the RFC finding is not supported by substantial evidence because: (1) the ALJ failed to properly consider the opinions of treating physician Dr. Bogost and consulting physician Dr. Rodriguez; (2) erroneously concluded plaintiff is not a credible witness; and (3) failed to fully and fairly develop the record. There is no merit to these contentions.

### A. *Physicians' Opinion Evidence:*

 The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987); *Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinions of a treating physician, *Ryan,* 528

F.3d at 1198, and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick,* 157 F.3d at 725; *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir.2008). Similarly, the ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician[,]" *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995); *Widmark v. Barnhart,* 454 F.3d 1063, 1066 (9th Cir.2006), and "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of the Soc. Sec. Admin.,* 166 F.3d 1294, 1298–99 (9th Cir.1999); *Ryan,* 528 F.3d at 1198.

### B. *Dr. Bogost:*

Dr. Bogost diagnosed plaintiff with bipolar II disorder and polysubstance dependence and made various findings regarding plaintiff's mental condition in two written reports dated September 28, 2006, and May 3, 2007. The plaintiff contends the ALJ improperly rejected Dr. Bogost's opinion in concluding plaintiff would not be disabled if she stopped her substance abuse. The plaintiff is mistaken.

Dr. Bogost found plaintiff could not work given her bipolar disorder and polysubstance abuse. A.R. 150–51. The ALJ agreed with this conclusion, finding plaintiff is disabled when she is abusing drugs. A.R. 11. However, as the ALJ noted, Dr. Bogost did not consider, or have any opinion about, what mental limitations plaintiff

---

8. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some

pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

would have if she stopped abusing drugs,[9] stating:

> The fact that [Dr. Bogost] ... has indicated the [plaintiff] cannot perform any work because of a combination of affective, substance dependence, and personality disorders is not material at this point in the sequential evaluation process since it does not address the issue of whether the [plaintiff] would still be disabled if she were not actively abusing drugs and further inquiry would yield no significant findings since the treating source has indicated that the [plaintiff's] limitations are mild in terms of memory and judgment when sober, that she has no problems in terms of social withdrawal, and that she is simply apathetic[,] which is consistent with the findings of polysubstance dependence. This is also consistent with [Dr. Rodriguez's] findings ... and fully consistent with the medical expert's findings at the hearing regarding the severity of the [plaintiff's] mental impairment if she were to stop abusing drugs.

A.R. 13. In other words, contrary to plaintiff's contention, the ALJ did not ignore Dr. Bogost's opinion. Rather, the ALJ agreed with Dr. Bogost's opinion to the extent it addressed plaintiff's ability to work while she continued to abuse drugs, *see Valentine*, 574 F.3d at 691–92 (no error when ALJ considered physician's evidence claimant contends ALJ ignored), and only "rejected" Dr. Bogost's opinion to the extent it failed to consider the pertinent issue before the ALJ—whether plaintiff would remain disabled if she stopped abusing drugs. A.R. 13. To address that question, the ALJ relied on the two physicians who considered the issue— examining physician Dr. Rodriguez and medical expert Dr. Malancharuvil—and

these physicians' findings constitute substantial evidence to support the ALJ's RFC assessment. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support ALJ's disability determination); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), *cert. denied*, 519 U.S. 1113, 117 S.Ct. 953, 136 L.Ed.2d 840 (1997). Thus, the ALJ did not err, and there is no merit to plaintiff's claim. *Valentine*, 574 F.3d at 691–92.

### C. *Dr. Rodriguez:*

On February 10, 2007, when Dr. Rodriguez conducted a complete psychiatric examination of plaintiff, she was sober and not under the influence of drugs; however, Dr. Rodriguez determined plaintiff "is still actively using drugs illegally...." A.R. 130. Based on his examination, Dr. Rodriguez determined plaintiff was: able to "understand, remember and carry out *simple* one or two-step instructions"; able "to do detailed and *complex* instructions"; "[s]lightly limited" in her abilities to relate and interact with supervisors, coworkers and the public, to associate with day-to-day work activity, to adapt to the stresses common to a normal work environment, to maintain regular attendance in the work place and perform work activities on a consistent basis, and to perform work activities without special or additional supervision; and "[m]oderately limited in her ability to maintain concentration and attention, persistence and pace." A.R. 133– 34. Dr. Rodriguez also opined that if plaintiff "stopped using all illegal drugs

---

**9.** The record indicates plaintiff was abusing drugs throughout her treatment at RCDMH.

*See,* e.g., A.R. 158, 163, 175, 181, 201.

and [was] properly treated ..., she could easily recover from her problems within twelve months." A.R. 133.

The plaintiff contends that the ALJ failed to consider Dr. Rodriguez's opinion that plaintiff is "moderately" limited in her ability to "maintain concentration and attention, persistence and pace[,]" and, thus, failed to provide a "legally sufficient reason" for rejecting this finding. Jt. Stip. at 3:6–4:11. The plaintiff is mistaken. The ALJ did not "reject" any of Dr. Rodriguez's findings and, in fact, adopted Dr. Rodriguez's findings, specifically holding that "[w]ith regard to maintaining concentration, persistence or pace, the [plaintiff] would have marginally moderate difficulties if the substance use was stopped."[10] A.R. 12. Thus, the ALJ did not err, and there is no merit to plaintiff's claim. *Valentine*, 574 F.3d at 691–92.

### D. *Plaintiff's Credibility:*

■ Once a claimant has presented objective evidence she suffers from an impairment that could cause pain or other nonexertional limitations,[11] the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir.1991) (en

banc); *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004). Thus, if the ALJ finds the claimant's subjective complaints are not credible, he " 'must provide specific, cogent reasons for the disbelief.' " *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citations omitted); *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.2007). Furthermore, if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Morgan*, 169 F.3d at 599; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The plaintiff contends the ALJ improperly discounted her credibility. There is no merit to this claim. Indeed, as the Commissioner argues, plaintiff's claim is a red herring. At the administrative hearing, plaintiff did not specifically testify about any mental limitations she experiences absent her substance abuse, but instead stated only that she cannot work due to "mental problems," which led to a psychiatrist taking her "out of work" in 2006.[12] A.R. 19. By mental problems, plaintiff explained that she meant her "ability to remember things" and "[t]o focus."[13]

---

10. Moreover, although Dr. Rodriguez opined plaintiff is "moderately" limited in her ability to maintain concentration, persistence and pace, he also found plaintiff's difficulties in this regard do not prevent her from being able to perform even detailed and complex instructions. A.R. 133. The ALJ's RFC assessment, which limited plaintiff to light "work involving ... simple tasks, i.e., [no] more than four to five steps of instructions, [no] rapid, assembly-line-type work, [no] significant responsibility for the safety of others, [and no] significant hypervigilance[,]" A.R. 12, appropriately synthesized the limitations Dr. Rodriguez found.

11. "While most cases discuss excess pain testimony rather than excess symptom testimo-

ny, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." *Swenson v. Sullivan*, 876 F.2d 683, 687–88 (9th Cir. 1989).

12. The plaintiff did cursorily state drugs are not her main problem, and she has not been using any more, having last taken methamphetamine in September or October of 2007 and marijuana "not too long ago." A.R. 23–24, 38–39.

13. The plaintiff also testified she had blackouts, she is anemic, and she has headaches, ringing in her ears, back problems, stomach problems, gallbladder problems and ulcers;

A.R. 20. The ALJ, however, did not reject plaintiff's testimony. To the contrary, in finding plaintiff disabled when her substance abuse is considered, the ALJ found plaintiff "credible concerning her alleged symptoms and limitations because there is no credible evidence she has ever stopped using drugs[,]" A.R. 11, and this finding is supported by substantial evidence in the record demonstrating plaintiff continues to abuse drugs.[14] *See,* e.g., A.R. 23–24, 38, 122–23, 162, 170, 195. Therefore, the ALJ did not improperly discredit plaintiff. *Parra,* 481 F.3d at 750–51.

### E. *Duty To Develop The Record:*

 " 'In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Smolen,* 80 F.3d at 1288 (citation omitted); *Widmark,* 454 F.3d at 1068. This duty exists regardless of whether the claimant is represented by counsel, *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir.2003); *Tonapetyan,* 242 F.3d at 1150, and is "heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Tonapetyan,* 242 F.3d at 1150. However, only "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.' " *Id.* (citations omitted); *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir.2005).

however, she did not state these problems prevent her from working. A.R. 21–22, 41.

14. The ALJ also found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are consistent with the [RFC] assessment" because most of plaintiff's symptoms are "explainable by her drug abuse[,]" A.R. 13, and, as discussed throughout this opinion, plaintiff's drug abuse is not a basis for finding plaintiff disabled.

Here, the ALJ referred plaintiff for examinations by a psychiatrist, Dr. Rodriguez, and an orthopedic surgeon, William C. Boeck, Jr., M.D., A.R. 209–14, and also obtained a medical expert, Dr. Malancharuvil, who reviewed the medical evidence and listened to plaintiff's testimony before offering his opinions. A.R. 26–36. Yet, plaintiff contends the ALJ failed to develop the record because he did not seek further information from Dr. Bogost. It cannot be said, however, that there is any ambiguity in the evidence that would trigger the ALJ's duty to seek more information from Dr. Bogost. In fact, the ALJ specifically found no need for further inquiry. *See* A.R. 13 (Dr. Bogost "has indicated that the [plaintiff's] limitations are mild in terms of memory and judgment when sober, that she has no problems in terms of social withdrawal, and that she is simply apathetic...."). Since the ALJ had no problem interpreting Dr. Bogost's opinions, *Mayes,* 276 F.3d at 460, there is no merit to this claim.[15] For all these reasons, substantial evidence supported the ALJ's determination of plaintiff's RFC.

### V

 At Step Five, the burden shifts to the Commissioner to show the claimant can perform other jobs that exist in the national economy. *Hoopai v. Astrue,* 499 F.3d 1071, 1074–75 (9th Cir.2007); *Widmark,* 454 F.3d at 1069. There are two ways for the Commissioner to meet this

15. The plaintiff also claims the ALJ should have left the record open to allow her to supplement the record. Jt. Stip. at 20:11–12. Yet, plaintiff was represented at the administrative hearing by counsel who did not request the record be left open for supplementation. *See* A.R. 42–43. Moreover, plaintiff does not assert she attempted to reopen the hearing, 20 C.F.R. §§ 404.944, 416.1444, or supplement the record after the hearing, and there is nothing in the record itself to suggest that she could not have done so.

burden: "(1) by the testimony of a vocational expert, or (2) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." [16] *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir.1999); *Widmark,* 454 F.3d at 1069. The Commissioner "must 'identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified limitations.' " *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir.1999) (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir.1995)).

Here, a vocational expert, Alan L. Ey, testified at the administrative hearing. *See* A.R. 41–43. Hypothetical questions to a vocational expert must consider all of the claimant's limitations, *Lewis v. Apfel,* 236 F.3d 503, 517 (9th Cir.2001), and "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett,* 180 F.3d at 1101. The plaintiff contends the hypothetical question to the vocational expert "fails to set out all of the plaintiff's particular limitations and restrictions" as identified by Drs. Bogost and Rodriguez. Jt. Stip. at 22:26–23:05. There is no merit to this claim.

The ALJ asked vocational expert Mr. Ey the following hypothetical question:

> Let's suppose, Mr. [Ey], someone has a high school level education, not illiterate, limited to where they can only do simple tasks at work involving up to four or five-step instruction but no more than that, and no requirements for excessive speed in their physical activities like you'd have at a rapid assembly line, no responsibility for safety operations, no requirements for hypervigilance, no work around hazardous machinery and she'd be limited to light range of work. . . .

> \* \* \*

> Are there any unskilled jobs that could [be] performed? A.R. 41–42. In response, the vocational expert identified the jobs of housekeeper (Dictionary of Occupational Titles ("DOT") [17] no. 323.687–014), with 21,000 job positions regionally and 302,000 nationally, and mail clerk (DOT no. 209.687–026), with 4,000 job positions regionally and 79,000 nationally. A.R. 42.

Since this hypothetical question reflects the limitations found by Dr. Rodriguez and the ALJ's RFC determination of limited light work, which this Court has found was proper, the vocational expert's testimony constitutes substantial evidence to support the ALJ's Step Five determination that plaintiff can perform other work in the national economy and is not disabled. *Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1175–76 (9th Cir.2008).

## ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

---

**16.** The Grids are guidelines setting forth "the types and number of jobs that exist in the national economy for different kinds of claimants. Each rule defines a vocational profile and determines whether sufficient work exists in the national economy. These rules represent the [Commissioner's] determination, arrived at by taking administrative notice of relevant information, that a given number of unskilled jobs exist in the national economy that can be performed by persons with each level of residual functional capacity." *Chavez v. Dep't of Health & Human Servs.,* 103 F.3d 849, 851 (9th Cir.1996) (citations omitted).

**17.** The DOT is the Commissioner's primary source of reliable vocational information. *Johnson,* 60 F.3d at 1434 n. 6.